UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| THE JAMES MADISON PROJECT <u>et al.</u>, | * * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 25-00666 (LLA) |
| DEPARTMENT OF JUSTICE | * * * | |
| Defendant. | * * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS' MOTION
<u>TO COMPEL EXPEDITED PROCESSING</u>**

**(ORAL ARGUMENTS REQUESTED)**

This Freedom of Information Act ("FOIA") action concerns records that served as the premise for the first-ever criminal prosecution of a former President of the United States for the alleged mishandling of properly classified documents and/or National Defense Information. <u>See</u> <u>United States v. Trump</u>, Case No. 23-80101-CR (S.D. Fla.)(AMC); *https://www.nbcnews.com/politics/read-full-indictment-text-classified-document-probe-rcna88600*. At issue here is whether expedited processing of the requests, which the Defendants have denied, should be ordered by the Court. Obviously, this is a threshold issue that would substantively and significantly impact these proceedings.

The Plaintiffs The James Madison Project ("JMP") and Brian J. Karem ("Mr. Karem")(hereinafter referred to jointly as the "Plaintiffs") sought copies of the allegedly classified documents that were retrieved by the U.S. Government from Mar-A-Lago, the Florida residence of the then-former President Donald J. Trump ("President

Trump"), and written summaries of the allegedly classified documents. Dkt. 6, ¶14 (Amended Complaint)(docketed April 4, 2025). The FOIA requests were directed to the Department of Justice ("DOJ"), and specifically to several of its component entities; namely, the Office of Information Policy ("OIP"), the National Security Division ("NSD"), the Criminal Division ("CRM"), and the Federal Bureau of Investigation ("FBI")(collectively referred to as the "Defendant").

## FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiffs' submitted identical FOIA requests dated March 5, 2025, to each of the Defendant's components. The information sought was straightforward in scope:

1) The entirety of the allegedly classified documents that were located at Mar-a-Lago or that were otherwise retrieved by the U.S. Government from then-former President Trump, specifically including, but not limited to, the allegedly classified records that were identified by Special Counsel Smith in the criminal indictment of President Trump;

2) Any written summaries or lists of the allegedly classified documents encompassed by line item #1, including, but not limited to, descriptions of the classification level of individual documents, the originating agency of individual documents, and the date upon which individual documents were originally provided to President Trump during his first term in office.

Exhibit "1" at 3 (FOIA Request). The FOIA requests outlined in detail a clear and urgent need for the disclosure of this information in order to inform the public regarding Federal Government activity. Id. at 4.

By letter dated March 6, 2025, OIP denied the request for expedited processing as it asserted it "cannot identify a particular urgency to inform the public about an actual or alleged federal government activity beyond the public's right to know about government activities generally." Exhibit "2". This lawsuit was then initiated on March 6, 2025, Dkt. 1, to challenge that specific denial of expedited processing. By letter dated March 13,

2025, CRM responded that it did not possess copies of the relevant records. Exhibit "3". The FBI denied the Plaintiffs' request for expedited processing by letter dated March 25, 2025, simply because it claimed "not enough" information had been provided concerning the statutory requirements permitting expedition. Exhibit "4". The FBI also claimed in a form letter dated March 27, 2025, that "unusual circumstances" existed that justified delays in its processing requirements. Exhibit "5".

After the Plaintiffs exhausted all required administrative remedies, and in order to properly challenge the substantive withholdings, an Amended Complaint was filed on April 3, 2025, Dkt. 6. More than four months have passed since the FOIA requests were submitted and this lawsuit was initially filed and the Defendant was affirmatively placed on notice of its litigation obligations. Since that time, virtually nothing of substance has transpired that provides any clarity on when non-exempt copies of responsive records will be produced, in whole or in part (if at all).

The Defendant sought two separate extensions of time simply to file an Answer to the Amended Complaint, Dkt. Nos. 8 (filed April 12, 2025), 9 (filed May 12, 2025), and the original attorney assigned to this matter on behalf of the Defendants left Government service and was replaced by current Government counsel, Dkt. 10 (May 30, 2025).[1]

---

[1] The undersigned are sympathetic to the resource restraints faced by both Government counsel and the individual Defendant agency components, but those are self-imposed difficulties inflicted on them by the current Administration and are neither the fault of nor the problem of the Plaintiffs. The Plaintiffs are particularly disturbed by information disclosed by the Senate Judiciary Committee's Ranking Member, Senator Richard Durbin, indicating that the Attorney General redirected scarce FBI resources away from FOIA processing to meet the explicitly political needs of President Donald J. Trump ("President Trump") and his desire to rush the processing and possible release of documents tied to Jeffrey Epstein. *https://x.com/JudiciaryDems/status/ 1946246860974305447/photo/2*.

3

In the Parties' Joint Status Report of July 11, 2025, two of the individual defendants – OIP and FBI – were unable to present any information outlining the status of their *searches* for responsive records, much less a proposal concerning the processing or ultimate release (if any) of non-exempt portions of the records. Dkt. 13, ¶2. One of the Defendant's components, NSD, was still conducting responsiveness reviews, and a fourth – CRM – asserted it had no responsive records and that the request should be redirected to the other three individual defendants. Id.

At that time, the Plaintiffs made clear their frustration with the pace by which the Defendant appears to be moving to handle what presumably should be a rather straightforward search for and processing of records, at least some (if not all) of which were previously inventoried and organized for purposes of criminal prosecution of President Trump. Dkt. 13, ¶5(c).[2] The Plaintiffs further noted their intent to file the present Motion on or before July 31, 2025. Id., ¶5(a).

In a follow-up Joint Status Report filed on July 28, 2025, Dkt. 14, the Plaintiffs noted that an outreach had been made to the Defendant on July 11, 2025, inviting the submission of any proposal for a production schedule of non-exempt records, or even partial rolling releases. This invitation went unanswered. Id., ¶3(b). Instead, the Defendant attempted to update the Court on the status of its components' efforts, none of

---

[2] If only to reiterate how simple some aspects of the searches should be to conduct, a detailed property inventory was publicly docketed by the U.S. Government in the original pre-indictment proceeding identifying the specific materials seized from Mar-a-Lago. Exhibit "6" (Notice by Investigative Team of Status of Review, publicly docketed August 30, 2022).

which offered any anticipated date by which *production* would begin, let alone be completed, for OIP, NSD or the FBI. Id.[3]

With their good-faith efforts to reach an accommodation on any possible schedule having failed, the Plaintiffs now seek to adjudicate the First Cause of Action in their Amended Complaint, Dkt. 6, to determine whether or not they are entitled to expedited processing of their FOIA requests. Government counsel has indicated that the Defendant opposes this Motion and a briefing schedule has been entered by the Court. See Minute Order dated July 28, 2025.

For the reasons described below, the Plaintiffs believe they are entitled to expedited processing and this Court should respectfully grant that relief.

## ARGUMENT

FOIA requires agencies to issue regulations that provide for the expedited processing of requests for requesters who demonstrate "compelling need," 5 U.S.C. § 552(a)(6)(E), or for any other case deemed appropriate by the agency. 5 U.S.C. § 552(a)(6)(E)(i)(II). Pursuant to the statute, a requester can show "compelling need" in one of two ways but only one of them are applicable here: if the requester is a "person primarily engaged in disseminating information," and by demonstrating that there exists an "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

---

[3] Just before the most recent Joint Status Report was filed on July 28, 2025, and months after this litigation had been commenced, NSD issued a decision by letter dated July 25, 2025, denying the Plaintiffs expedited processing on the basis it "cannot identify a particular urgency to inform the public about an actual or alleged federal government activity beyond the public's right to know about government activities generally." Exhibit "7".

5

But that is not the only criteria that actually applies to this dispute. As noted, the Statute provides for circumstances as "deemed appropriate by the agency". Meaning, an agency can expand the circumstances where a requester would be entitled to expedited processing, and the Defendant has, to its credit, done just that. Pursuant to 28 C.F.R. § 16.5(c), the Defendant *shall* grant expedited processing not only where there is "(ii) An urgency to inform the public about an actual or alleged Federal Government activity, if made by a person who is primarily engaged in disseminating information" but also where "(iv) A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence."[4]

## I. THE PLAINTIFFS ARE PRIMARILY ENGAGED IN DISSEMINATING INFORMATION

According to 5 U.S.C. § 552(a)(4)(A)(ii):

> the term 'a representative of the news media' means any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience.

---

[4] The Defendant's regulations further note that "[r]equests for expedited processing that are based on paragraph (e)(1)(iv) of this section must be submitted to the Director of Public Affairs at the Office of Public Affairs, Department of Justice, 950 Pennsylvania Avenue NW., Washington, DC 20530-0001. A component that receives a misdirected request for expedited processing under the standard set forth in paragraph (e)(1)(iv) of this section shall forward it immediately to the Office of Public Affairs for its determination." 28 C.F.R. § 16.5(e)(2). The Plaintiffs admittedly did not submit their request for expedited processing directly to the Director of Public Affairs but submit the nature of their request should have been reasonably construed to implicate paragraph (e)(1)(iv) and should have been forwarded, as the regulations direct, by OIP, NSD and/or FBI to that office. As a matter of precaution, and without any waiver of their argued rights herein which independently stand, the Plaintiffs are submitting a renewed expedited processing request directly to the Director of Public Affairs. That request and forthcoming component decision may, if necessary, be incorporated into this Motion at a later date.

Both Plaintiffs JMP and Karem have been recognized numerous times as representatives of the news media with respect to their past FOIA requests and presumably this is not an issue that is being disputed by the Defendant. Regardless, they – and especially Mr. Karem – can demonstrate their intent and ability to publish or otherwise disseminate information to the public. See Nat'l Security Archive v. Dep't of Defense, 880 F.2d 1381, 1386 (D.C. Cir. 1989). Mr. Karem is an award-winning investigative reporter[5], and JMP is a non-partisan transparency organization with an established track record of coordinating the publication of original works in reliance upon documentation obtained through FOIA. Exhibit "1" at 3.

## II. THE PLAINTIFFS HAVE DEMONSTRATED THERE IS AN URGENCY TO INFORM THE PUBLIC CONCERNING ACTUAL OR ALLEGED FEDERAL GOVERNMENT ACTIVITY. ADDITIONALLY, THERE EXISTS WIDESPREAD AND EXCEPTIONAL MEDIA INTEREST IN, AS WELL AS RAISES QUESTIONS ABOUT THE GOVERNMENT'S INTEGRITY AND AFFECTS PUBLIC CONFIDENCE BECAUSE OF, THE CRIMINAL PROSECUTION OF A UNITED STATES PRESIDENT

Each of the three components of the Defendant are ostensibly in possession of relevant records and have denied the Plaintiffs expedited processing. By letters dated March 6, 2025, and July 25, 2025, OIP and NSD, respectfully, asserted they "cannot identify a particular urgency to inform the public about an actual or alleged federal government activity beyond the public's right to know about government activities generally." Exhibit "2" & "7". The FBI merely claimed in its letter dated March 25,

---

[5] Supporting information regarding Mr. Karem's status as a representative of the news media was also submitted with the FOIA request, Exhibit "1", and at no point has it been challenged by the Defendant. See *https://www.harpercollins.com/cr-109986/brian-j-karem*; *https://www.washingtonpost.com/ news/arts-and-entertainment/wp/2017/06/28/i-dont-like-bullies-reporter-explains-why-he-confronted-sarah-huckabee-sanders/?noredirect=on&utm _term=.a60cc22d3df4*.

2025, that "not enough" information had been provided concerning the statutory requirements permitting expedition. Exhibit "4".

Under FOIA, it is well settled by the leading and initial case on the topic of expedited processing that agency denials of a request for expedited processing are subject to *de novo* review by a district court. Al-Fayed v. CIA, 254 F.3d 300, 304 (D.C. Cir. 2001)[6], citing 5 U.S.C. § 552(a)(6)(E)(iii). The D.C. Circuit has explained that FOIA requires the consideration of several factors to determine if the "urgency to inform" standard is satisfied. To evaluate whether a requester has established urgency, "courts must consider three factors: '(1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity.'" Energy Policy Advocates v. Dep't of Interior, 2021 U.S. Dist. LEXIS 180480, *7 (D.D.C. Sept. 22, 2021), quoting Al-Fayed, 254 F.3d at 310.

The D.C. Circuit in Al-Fayed was explicitly clear in stating that FOIA does not confer upon agencies the discretion to create their own definition of what qualifies as a compelling need or to consider its own administrative backlog of requests when assessing the urgency to inform the public. Id. at 304-07. Needless to say, this Court could easily take judicial notice of the widespread international attention and interest underlying every aspect of President Trump's federal court prosecution under the Espionage Act. But even though the basis for the expedited processing decision is to be limited to the existing administrative record that was before the agency at the time of the FOIA requests, see Energy Policy Advocates,

---

[6] The undersigned lead counsel was the attorney of record on the Al-Fayed litigation.

2021 U.S. Dist. LEXIS 180480, *7, the Plaintiffs have more than sufficiently demonstrated a compelling need for expedited processing.

The FOIA requests specifically cited and incorporated various substantive news articles and legal filings that outlined how, among other things:

    (1) In the wake of President Donald Trump's victory in the 2024 presidential election, the criminal case against him that was brought by then-Special Counsel Jack Smith in the U.S. District Court for the Southern District of Florida was ended. *https://thehill.com/regulation/court-battles/5010990-trump-classified-documents-case-dropped/*.[7] That criminal case, originally unsealed on June 9, 2023, alleged violations of federal criminal law concerning, among other things, the unlawful retention of national defense information, namely boxes of allegedly classified documents that had been stored at the Mar-a-Lago resort without authorization and in an unsecured location. *https://www.nbcnews.com/politics/read-full-indictment-text-classified-document-probe-rcna88600*;

    (2) Pursuant to Department of Justice regulations, Special Counsel Smith drafted a report for the U.S. Attorney General explaining the basis for the charges he brought in that case and why he declined to bring other charges he might have been considering. This report, known as Volume II, has not yet been made public. *https://lawandcrime.com/high-profile/no-valid-justification-cannon-slams-dojs-urgent-desire-to-release-jack-smiths-full-trump-report-based-on-a-non-existent-historical-practice/*; *https://www.nytimes.com/2025/02/24/us/trump-documents-report.html*;

    (3) On February 28, 2025, President Trump, as well as several of his senior aides, confirmed that the boxes of documents that were seized from Mar-a-Lago and which served as the premise of the criminal case had been returned to Mar-a-Lago. *https://www.cnn.com/2025/02/28/politics/trump-seized-boxes-returned-air-force-one/index.html*. President Trump stated that the boxes were going to be part of his future presidential library. *Id.* White House Communications Director Steven Cheung stated the boxes contained "personal items that belong

---

[7] This article further incorporated *https://thehill.com/regulation/court-battles/4052239-trump-indictment-lays-bare-security-risks-of-storage-at-mar-a-lago/*, which also hyperlinked to reporting of the indictment, *https://thehill.com/policy/national-security/4042794-trump-indicted-on-37-counts-in-mar-a-lago-indictment/*, as well as the criminal indictment itself. *https://storage.courtlistener.com/recap/gov.uscourts.flsd.648653/gov.uscourts.flsd.648653.3.0.pdf* (Exhibit "8").

9

>   to the president". *Id*. Aliba Habba, Counselor to the President, stated that the documents were President Trump's "personal items". *Id*;
>
> (4) Throughout the criminal case, President Trump's lawyers repeatedly argued in court filings that the documents at issue had (a) been completely declassified by President Trump prior to his departure from the White House after the completion of his first term in office, and (b) had been designated as "personal records" by President Trump as well. *https://www.pbs.org/newshour/politics/trumps-lawyers-call-for-dismissal-of-classified-documents-case-citing-presidential-immunity; https://www.palmbeachpost.com/story/news/trump/2024/03/14/donald-trump-attorneys-in-mar-a-lago-classified-documents-case-urge-judge-aileen-cannon-drop-charges/72941863007/; https://www.nbcnews.com/politics/donald-trump/trump-allies-say-declassified-mar-lago-documents-experts-say-unclear-w-rcna42311*;
>
> (5) Given the clear statements, both in social media posts and in legal filings, by President Trump, his lawyers, and White House staff, it is reasonable to conclude the allegedly classified records have in fact been officially declassified. Public photographs of the boxes being loaded onto Air Force One do not show any indication that the boxes were being transported in an approved manner for classified records. *https://www.cnn.com/2025/02/28/ politics/trump-seized-boxes-returned-air-force-one/index.html*. There is no indication the records are all being stored in a secure location at Mar-a-Lago resort. Accordingly, the Government can no longer rely upon FOIA Exemption One as a basis to withhold in full or redact in part copies of those records which remain in the Government's possession.

Exhibit "1" at 2-3.[8]

The information submitted to the Defendant to justify expedited processing of the Plaintiffs' request exemplifies the essence of a subject matter that was (and still is) "central to a pressing issue of the day" or of "immediate public interest in view of [an] ongoing debate". <u>Wadelton v. Dep't of State</u>, 941 F. Supp. 2d 120, 123 (D.D.C.

---

[8] For the Court's convenience, the Plaintiffs are more than willing to file clear and clean copies of all of the news articles for which citations, along with the incorporated articles and accompanying documents as well, were submitted to the Defendant in support of their request for expedition (and which are reproduced herein in this brief and can be easily viewed online separately). Alas, the undersigned counsel was experiencing reproductive difficulty in preparing complete copies of the relevant articles in time for this specific filing.

2013)(collecting cases). Indeed, one would reasonably surmise the relevant importance of the requested records, which would – or at least may – implicate the criminal activity of a sitting U.S. president, remains at its apex at all times. See Heritage Found. v. EPA, 2023 U.S. Dist. LEXIS 66153, *4 (D.D.C. Apr. 14, 2023)(referencing need to identify "specific end point" at which information's value would decrease); see also Democracy Forward Found. v. OMB, 2025 U.S. Dist. LEXIS 68018, *21 (D.D.C. Apr. 9, 2025) ("[T]he question boils down to whether the records requested will become stale after the requested date and thus be of little value to inform the public of ongoing proceedings of national importance."), quoting CREW v. DOGE Serv., 2025 U.S. Dist. LEXIS 42896, *19 (D.D.C. Mar. 10, 2025).

The subject matter or level of public interest at issue in this case, and the specific records themselves, is nowhere near the situation experienced in Wadelton where the topic "bears no resemblance to . . . matters of genuine widespread public concern." Wadelton, 941 F. Supp. 2d at 123, citing ACLU v. United States DOJ, 321 F. Supp. 2d 24, 29 (D.D.C. 2004). It is unquestionable that courts routinely affirm agencies' denials of requests to expedite because the requester has failed to adequately demonstrate urgency based on the administrative record. See e.g., Al-Fayed, 254 F.3d at 311 ("[T]he record does not contain any news report on the subject . . . other than reports on the press conference plaintiffs held to announce the filing of their complaint . . . . Such evidence is insufficient to demonstrate that the request concerns a matter of current exigency."); Allied Progress v. Consumer Fin. Prot. Bureau, 2017 U.S. Dist. LEXIS 67889, *16 (D.D.C. May 4, 2017)("[T]he Court in no way concludes that there is not in reality substantial public interest . . . . Rather, the Court merely finds that the current

11

record, which it was Plaintiff's burden to develop, does not provide any evidence of this public interest."); Wadelton, 941 F. Supp. 2d at 124 ("Plaintiffs' submission of one article, a series of posts on a specialized blog, and plaintiff Truthout's representation that it 'intends' to publish a story do not come close to demonstrating a comparable level of media interest.").

It is hard to fathom that the topic at issue here – the criminal prosecution of a U.S. president and the extent to which he was guilty of the alleged conduct, as well as whether the President and his spokespersons/attorneys have been lying about the classified or personal nature of the requested records – does not easily demonstrate a matter of a current exigency to the American public. See e.g., Leadership Conf. on Civil Rights v. Gonzales, 404 F. Supp. 2d 246, 260 (D.D.C. 2006)(finding "[p]laintiff's FOIA requests could have a vital impact on development of the substantive record" related to issue of reauthorization of provisions of Voting Rights Act); ACLU v. DoD, 2006 U.S. Dist. LEXIS 36888, at *21-23 (N.D. Cal. May 25, 2006)(requesters established "public's need to know" as well as "urgency of the news" related to Pentagon intelligence program, and stating "extensive media interest usually is a fact supporting not negating urgency"). The news media citations, along with the accompanying documents incorporated therein, that were submitted to the Defendant as part of the administrative record all support this premise.

Respectfully, the information submitted with the Plaintiffs' FOIA requests should be construed as more than sufficiently meeting the "compelling need" standard and warrant expedited processing.

### III. GIVEN EXPEDITED PROCESSING IS WARRANTED, THE DEFENDANT SHOULD BE REQUIRED TO PROCESS AND PRODUCE ALL NON-EXEMPT RECORDS WITHIN THREE MONTHS OF THE COURT'S ORDER

An agency that grants expedited processing of a request must process it "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii). See Gerstein v. CIA, No. 06-4643, 2006 WL 3462658, at *8 (N.D. Cal. Nov. 29, 2006)("FOIA does not set forth a specific deadline by which expedited processing . . . must be concluded," but rather provides that requests granted expedited processing shall be processed '"as soon as practicable'"); ACLU v. DoD, 339 F. Supp. 2d 501, 503-04 (S.D.N.Y. 2004)("While it would appear that expedited processing would necessarily require compliance in fewer than 20 days, Congress provided that the executive was to 'process as soon as practicable' any expedited request."), citing 5 U.S.C. § 552(a)(6)(E)(iii).

At the time of the filing of this Motion, the Defendant has already possessed the Plaintiffs' FOIA requests, as well as been on notice of this litigation, for nearly five months. The briefing schedule alone on this Motion extends to September 11, 2025, which would be more than six months, and there is obviously no telling how much longer this issue will be subject to judicial consideration in light of any number of practical factors. Realistically speaking, by the time a three-month period will have been ordered by the Court, if this Motion is granted, the Plaintiffs believe three months is more than a reasonable and manageable period of time for the Defendant to comply, especially given there is a finite easily identifiable number of records.[9] See Exhibit "6".

---

[9] The Defendant informed the Court it intends to provide "additional support" for the argument that the Plaintiffs' FOIA requests are being processed expeditiously, and that "Plaintiffs should not be able to catapult their FOIA requests ahead of many others that were submitted earlier in time." Dkt. 13, ¶6. The Plaintiffs welcome that debate, but this

13

## CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion for Expedited Processing should be granted and the Defendant should be required to process and produce all non-exempt records within three months.

Date: July 31, 2025

                                  Respectfully submitted,

                                      *s/Mark S. Zaid*
                                  _____

Mark S. Zaid, Esq.
D.C. Bar #440532
Bradley P. Moss, Esq.
D.C. Bar #975905
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 700
Washington, D.C. 20036
(202) 498-0011
Mark@MarkZaid.com
Brad@MarkZaid.com

Attorneys for the Plaintiffs

---

argument is not only confusing, but, more importantly, misunderstands the purpose of expedited processing. The very nature of a request that deserves expedition is that it necessitates elevating the FOIA request outside of the standard "first in, first out" process. Howell v. Dep't of Homeland Sec., 2024 U.S. Dist. LEXIS 194187, *4 (D.D.C. Oct. 25, 2024); Energy Policy Advocates, 2021 U.S. Dist. LEXIS 180480, *7. Absent that, "expedited processing" is nothing but a cute legal term of art with no substantive meaning or application.